_____

APPEAL NO. 22-13649-B
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH JUDICIAL CIRCUIT

_____

AUTO-OWNERS INSURANCE COMPANY

Appellant,

versus

EARL D. BARRS

Appellee,

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA, MACON DIVISION
_____

**BRIEF OF APPELLANT**
_____

Michael C. Kendall
Georgia Bar. No. 414030
**KENDALL | MANDELL, LLC**
3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:  (770) 577-3559
Facsimile:  (770) 577-8113

**COUNSEL FOR APPELLANT AUTO-OWNERS INSURANCE COMPANY**

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the Appellant and undersigned counsel of record certify that the following individuals and entities have an interest in the outcome of this case and/or are entities related to Appellant and/or Appellee:

- Auto-Owners Insurance Company

- Barrs, Earl D.

- Dubberly, IV, Bruce D.

- Groover, Duke

- James, Bates, Brannan, Groover LLP

- Kendall Mandell, LLC

- Kendall, Michael C.

- Owners Insurance Company

- Self, III, Tilman E., Judge, U.S.D.C., M.D.Ga.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Auto-Owners Insurance Company does not request oral argument on this Appeal. The issues presented are straightforward and based on well-established law that was incorrectly applied by the District Court below.  As such, Auto-Owners believes that this Appeal can be resolved on the District Court record without oral argument.

# TABLE OF CONTENTS

<u>Page No.</u>

<u>Appellant's Certificate of Interested Persons and Corporate Statement</u> ...................i

<u>Statement Regarding Oral Argument</u> ....................................................... ii

<u>Table of Contents</u> .......................................................................... iii

<u>Table of Citations</u>.........................................................................v

<u>Statement of Subject Matter and Appellate Jurisdiction</u> ...................................... viii

<u>Statement of the Issues</u>....................................................................ix

<u>Statement of the Case</u>....................................................................1

    I.    Course of Proceedings Below .............................................1

    II.    Statement of Facts ...................................................3

    III.    Standard of Review ...................................................6

<u>Summary of the Argument</u>...................................................................6

    I.    The Damages Awarded in the Consent Judgment Are Not Covered Under the Policy…………………………………………… 6

    II.    There is No Duty to Indemnify Against the Consent Judgment If There is No Coverage For Any Claim Upon Which The Consent Judgment is Based……………………………………………9

    III.    Barrs Ultimately Admitted That No Coverage Exists. . . . . . . . . . .  10

Argument and Citation of Authority ........................................................11

    I.    The Damages Awarded In the Consent Judgment Are Not
        Covered Under the Policy ...................................................11

        A. Choice of Law ................................................................11

        B.  The Two Categories of Property Damage ....................11

        C.  Defective Work is Not Covered .................................12

        D.  Intentional Acts are Not Covered .............................13

        E.  Exclusion j(5) applies ................................................19

        F.  Exclusion m. applies ................................................20

    II.    There Is No Duty to Indemnify Against the Consent Judgment
        If There Is No Coverage For Any Claim Upon Which The
        Consent Judgment is Based…………………………………… 21

    III.    Barrs Ultimately Admitted That No Coverage Exists For the
        Consent Judgment ..............................................................26

Conclusion ...............................................................................................30

Certificate of Compliance with Rule 32(a) ............................................31

Certificate of Service ..............................................................................32

Certificate of Electronic Filing ...............................................................33

<u>TABLE OF CITATIONS</u>

**Cases**

*Ala. Hosp. Ass'n Trust v. Mutual Assurance Soc'y*,

   538 So. 2d 1209, 1216 (Ala. 1989). ................................................- 24 -

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*

   713 F.2d 618, 621 (11th Cir. 1983)…………………………………………28

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) .....- 1 -

*Chix v. Ga. Farm Bureau Ins. Co.*, 258 S.E.2d 208, 209 (Ga. Ct. App. 1979) ..- 25 -

*Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969)........................- 1 -

*Continental Cas.Co. v. HSI Financial Svcs.*, 266 Ga. 260, 262 (1996) .............- 16 -

*Custer x. Terex Corp.*, 196 Fed. Appx. 733 (11th Cir. 2006)…………………- 26 -

*G.M. Sign, Inc. v. St. Paul Fire & Marine Ins. Co.*,

   768 Fed. Appx. 982 (11th Cir. 2019) .................................................... - 15 -, - 17 -

*Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*,

   928 So. 2d 1006, 1012-13 (Ala. 2005) .................................................. - 14 -, - 23 -

*IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co.*,

   797 F. Supp. 2d 660, 664 (D. Md. 2011) ......................................................- 16 -

*Jefferson Insurance Co. v. Dunn*, 269 Ga. 213, 214 (1998)..............................- 16 -

*Macon Iron & Paper Stock Co. v. Transcontinental Ins. Co.*,

   93 F. Supp. 2d 1370 (M.D. Ga. 1999)................................................... - 15 -, - 17 -

*Matthews v. State Farm Fire & Cas. Co*.,

    500 Fed. App'x 836, 840-841 (11th Cir. 2012) .............................................- 25 -

*McGill v. Am. Trucking & Transp., Ins. Co.*,

    77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015) ...................................................- 21 -

*Monterrey Mexican Rest. of Wise, Inc. v. Leon*, 282 Ga. App. 439, 453 (2006)- 25 -

*New Star Realty, Inc. v. Jungang PRI USA, LLC*,

    346 Ga. App. 548, 562 (Ga. Ct. App. 2018) ...................................................- 18 -

*Owners Ins. Co. v. Jim Carr Homebuilder, LLC*,

    157 So. 3d 148, 156 (Ala. 2014) ....................................................................- 13 -

*Pa. Nat'l Mut. Cas. Ins. Co. v. Snider*,

    607 Fed. Appx. 879, 881 (11th Cir. 2015)        *- 9 -, - 21*-

*Park 'n Go v. United States Fid. & Guar. Co.*, 266 Ga. 787, 790 (1996) ..........- 19 -

*Reserve Life Ins. Co. v. Davis*, 164 S.E.2d 132, 133 (Ga. 1968).........................- 25 -

*Royal Indem. Co. v. Smith*, 121 Ga. App. 272, 274 (1970) ................................- 19 -

*State Farm Fire & Casualty Co. v. Myrick*,

    611 F. Supp. 2d 1287 (M.D. Ala. 2009).............................................- 14 -, - 25 -

*Taylor Morrison Servs. v. HDI-Gerling Am. Ins. Co.*,

    746 S.E.2d 587, 591 (Ga. 2013) ....................................................................- 13 -

*Town & Country Prop., L.L.C. v. Amerisure Ins. Co.*,

    111 So. 3d 699, 707 (Ala. 2011) .........................................................- 12 -, - 13 -

Statutes

28 U.S.C. § 1332 ................................................................ vi, vii

28 U.S.C. § 1291. ............................................................. vii

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

On October 30, 2019, Appellee Earl D. Barrs ("Barrs") filed a complaint against Appellant Auto-Owners Insurance Company ("Auto-Owners") in the Superior Court of Bibb County. [Doc. No. 1-1] at p. 2 of 38. On December 12, 2019, Auto-Owners timely removed the action to the United States District Court for the Middle District of Georgia, Macon Division. [Doc. No. 1]. Auto-Owners removed this case on the basis of the District Court's subject matter jurisdiction over cases involving diversity of citizenship. 28 U.S.C. § 1332. *Id*.

Absolute diversity exists between Auto-Owners and Barrs. Auto-Owners is a corporation organized and existing under the laws of the state of Michigan with its principal place of business in the state of Michigan; Auto-Owners is a citizen of the state of Michigan; and, Auto-Owners was a citizen of the state of Michigan on the date of filing of Barrs' suit and has been thereafter. See [Doc. No. 1] at p. 2 of 5 (¶ 3). Auto-Owners is not a citizen of the state of Georgia, and Auto-Owners was not a citizen of the state of Georgia on the date of filing of the Barrs lawsuit below and has not been thereafter. See id.

On the other hand, Barrs is a citizen of the state of Georgia and domiciled therein; and Barrs was a citizen and domiciliary of the state of Georgia on the date of filing of his lawsuit and has been thereafter. [Doc. No. 1], at p. 2 of 5 (¶ 2);

[Doc. No. 1-1] at p. 2 of 38 (¶ 1).

The amount in controversy in the District Court exceeded the sum of $75,000.00 exclusive of interest and costs.  In his complaint filed against Auto-Owners, Barrs sought a judgment in the sum of $557,500.00. [Doc. No. 1-1] at p. 9 of 38 (¶ b). The District Court ultimately entered judgment in favor of Barrs in that exact amount. [Doc. No. 56].

On October 5, 2022, the United States District Court for the Middle District of Georgia entered a final order, granting summary judgment in favor of Barrs. [Doc. No. 55]. On that same date, the District Court entered a final judgment in favor of Barrs, which disposed of all of claims pending before the District Court. [Doc. No. 56]. Auto-Owners has now appealed the District Court's multiple orders on summary judgment and the final judgment in favor of Barrs. [Doc. No. 38]; [Doc. No. 55]; [Doc. No. 56]. This Court now has jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1332, 1291.

## <u>STATEMENT OF THE ISSUES</u>

The issues presented by this appeal are as follows:

I.  Whether the District Court erred in finding that any portion of the unallocated Consent Judgment in favor of Barrs is covered under the policy issued by Auto-Owners.

II.  Whether the District Court erred when it awarded the full amount of the unallocated Consent Judgment, even though the District Court had previously found that a portion of the Consent Judgment was not covered under the policy issued by Auto-Owners.

III.  Whether the District Court erred when it ignored the admissions by Barrs below that no portion of the unallocated Consent Judgment is covered under the policy issued by Auto-Owners based on the District Court's prior ruling in the case.

## STATEMENT OF THE CASE

### I.    Course of Proceedings Below.

On October 30, 2019, Appellee Barrs filed a complaint against Appellant Auto-Owners in the Superior Court of Bibb County. [Doc. No. 1-1] at p. 2. In his complaint, Barrs sought indemnification under a commercial general liability insurance policy issued by Auto-Owners to AAA General Contractors, Inc. ("AAA") for damages awarded pursuant to a *Coblentz* agreement[1] and Consent Judgment entered against AAA in a separate lawsuit. [Doc. No. 1-1]. On December 12, 2019, Auto-Owners timely removed the action to the United States District Court for the Middle District of Georgia, Macon Division. [Doc. No. 1].

On August 10, 2020, the District Court held a hearing on Auto-Owners' motion to compel discovery. [Doc. No. 16]. During that hearing, the District Court determined that the case should be bifurcated into the issue of coverage first, then if coverage applies, the issue of damages. [Doc. 40] at p. 4 of 9. To facilitate this procedure, the District Court initially limited discovery to the issue of coverage and

---

[1] *Coblentz* agreements are named for the former Fifth Circuit case, *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969), which held that if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in that action, absent fraud or collusion. *Id.* at 1062-63. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

ordered motions for summary judgment to be filed on said issue at the conclusion of the limited discovery period. *Id.*

On September 29, 2021, following cross-motions for summary judgment on the coverage issues, the District Court issued an Order that granted, in part, and denied, in part, the cross-motions for summary judgment filed by Barrs and Auto-Owners. [Doc. No. 38]. Specifically, the District Court concluded that Auto-Owners' policy provides coverage for Barrs' claims of negligent hiring and retention and negligent supervision to the extent that they seek damages for stolen lumber and building materials. [Doc. No. 38] at p. 38. The District Court also concluded, however, that the portion of the Consent Judgment premised upon faulty workmanship, or the improper deconstruction of the Horizon Mill, is not covered under the policy. *Id.*

On May 18, 2022, Auto-Owners filed its second motion for summary judgment as to whether it owed any indemnification to Barrs in conjunction with the damages forming the basis of the Consent Judgment. [Doc. 46]. Barrs did not file a motion for summary judgment on this issue. After briefing was completed on Auto-Owners' second motion for summary judgment, on September 21, 2022, the District Court entered an Order, denying Auto-Owners' second motion for summary judgment. [Doc. 52].

In its September 21, 2022 rder, the District Court also issued a Show Cause order as to why it should not proceed to enter final summary judgment in favor of Barrs, *sua sponte*. [Doc. 52]. On September 28, 2022, Barrs filed a response to the Show Cause order. [Doc. 53]. On October 3, 2022, Auto-Owners responded to the Show Cause order, opposing the entry of final summary judgment in favor of Barrs for numerous reasons. [Doc. 54].

On October 5, 2022, the District Court entered an Order, granting summary judgment to Barrs in the amount of $557,500.00. [Doc. 55]. On that same date, the District Court entered final Judgment on this Order. [Doc. No. 56]. This Order and Judgment, along with the prior Orders, disposed of the case before the District Court and are the basis for this Appeal. Auto-Owners filed a timely Notice of Appeal on October 27, 2022. [Doc. No. 57].

## II.    Statement Of Facts.

Barrs originally filed a lawsuit against AAA in the United States District Court for the Middle District of Georgia. [Doc. 34] at p. 2 of 23 (¶ 3). In this first lawsuit, Barrs alleged that it entered into a contract with AAA to deconstruct a building located on Barrs' property and to salvage building material. *Id*. at ¶ 4. Barrs alleged that AAA was liable for damages because AAA's agent and employee, Zachary Hood ("Hood"), misappropriated wood and other materials belonging to Barrs while working on the project under the direction and control of

AAA. [Doc. No. 26-3] at Ex. B, pp. 165-166, 169, 170-171, 173-175 (¶¶ 25-27, 40-44, 53-72). Barrs also alleged damages based on AAA's failure to perform its work in a workmanlike manner and in accordance with the contract, which led Barrs to terminate the contract and hire another contractor to complete the project. *Id*. at Ex. B, pp. 172-176 (¶¶ 47-49, 53-80).

After Barrs filed its lawsuit against AAA, Barrs and AAA entered into a settlement agreement wherein AAA admitted liability for $557,500.00 in damages, and AAA assigned to Barrs its right to claim coverage and recover funds available to AAA from a policy issued by Auto-Owners. [Doc. 34] at p. 6 of 23 (¶¶ 17-18). A Consent Judgment was subsequently entered against AAA for the claims of negligent deconstruction (Counts I and II), negligent hiring and retention (Count III), and negligent supervision (Count IV). [Doc. 34] at p. 7 of 23 (¶¶ 19-20). Each of these counts incorporated the factual allegations of the complaint. [Doc. 26-3], at pp. 173-176. The Consent Judgment does not allocate damages based on any specific claim, but rather awards a lump sum of damages based upon AAA's admitted liability to Counts I-IV. *See id*.

As part of the Consent Judgment, AAA admitted to the following: (1) AAA hired Hood to oversee the deconstruction project; (2) AAA "employed" Hood in the course and scope of deconstructing the building; (3) AAA directly controlled and commanded the actions of Hood; (4) Hood was acting as an agent of AAA at

- 4 -

the time it appropriated wood and other materials belonging to Barrs without authority; and (5) AAA failed to perform its work in a workmanlike manner and failed to use reasonable care in hiring, supervising, training, and retaining the contractors on the project. [Doc No. 1-1] at p. 5 of 38 (¶ 18); pp. 32-34 of 38; [Doc. No. 26-3] at Ex. B, pp. 165-166, 169, 170-171, 173-175 (¶¶ 25-27, 40-44, 53-72).

Owners Insurance Company issued a commercial general liability insurance policy to AAA. [Doc. 26-3] at p. 4 of 192 (¶ 5), Ex. A, p. 7; [Doc 34] at p. 1 of 23 (¶ 1). The policy was issued and delivered to AAA in Alabama. *Id*. at Ex. A, p. 21 of 192; and [Doc 34] at p. 1 of 23 (¶ 2).  AAA is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Alabama. *Id*. at Ex. B, p. 166 of 192 (¶ 3).

The policy only provides coverage for "property damage" arising out of an "occurrence," which the policy defines as an "accident." [Doc. 26-3] at p. 125 of 192; [Doc 34] at pp. 9-10 of 23, ¶¶ 24-25. Likewise, the policy excludes coverage for "property damage" "expected or intended from the standpoint of the insured." [Doc. 26-3] at p. 126 of 192; [Doc 34] at pp. 11-12 of 23, ¶ 26. The policy defines insureds to include AAA, as the named insured, as well as AAA's employees acting within the scope of their employment or while performing duties related to the conduct of the insured's business. [Doc. 26-3] at p. 134 of 192; [Doc 34] at pp.

- 5 -

13 of 23, ¶ 27. Again, AAA admits that its agent and employee stole Barrs' lumber and other materials while acting under its control and direction. [Doc No. 1-1] at p. 4 of 38 (¶¶ 13-14); pp. 21-27; [Doc. No. 26-3] at Ex. B, pp. 165-166, 169, 170-171, 173-175 (¶¶ 25-27, 40-44, 53-72).

## III.    Standard of Review

The District Court's grant of summary judgment is reviewed under de novo standard of review, and the district court's findings of fact are reviewed for clear error.  *See, e.g.*, *Levinson v. Reliance Standard Life Ins. Co*., 245 F.3d 1321, 1325 (11th Cir. 2001).

<u>**SUMMARY OF THE ARGUMENT**</u>

## I.    The Damages Awarded In The Consent Judgment Are Not Covered Under The Policy.

The lawsuit filed against AAA did not seek damages for "bodily injury," "advertising injury," or "personal injury," as those terms are defined under the policy. The only category of damages alleged in that action which could conceivably be covered under the policy is "property damage".

However, the policy only provides coverage for "property damage" arising out of an "occurrence," which the policy defines as an accident. [Doc. No. 26-3], at pp. 125, 140 of 192. In addition to requiring that any claimed damages be caused by an accident, the policy also excludes coverage for "property damage" "expected or

- 6 -

intended from the standpoint of the insured[,]" (Exclusion a), which includes those intentional acts committed by the insured's employees acting within the scope of their employment or while performing duties related to the conduct of the insured's business. [Doc. No. 26-3] at p. 126 of 192. The definition of an "occurrence" and this exclusion clearly and unambiguously preclude coverage for any damages arising out of the intentional theft and conversion of Barrs' property by AAA's admitted agent and employee, Hood, while he was acting under the control and at the direction of AAA.

The policy also contains standard business risk exclusions, which preclude coverage for costs associated with fixing or completing AAA's defective work. Courts have repeatedly held that CGL insurance policies do not operate as performance bonds and do not provide coverage to repair, replace, and complete the insured's faulty work. Thus, the faulty work and deconstruction are not covered. In fact, the District Court held as much below. [Doc. No. 38] at p. 38.

In addition, coverage for any loss arising out of the stolen lumber and other materials is also excluded by operation of Exclusion j(5), which precludes coverage for "property damage" to "personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured[.]" [Doc. 26-3] at p. 129 of 192. This exclusion clearly applies to any damages resulting from the theft of Barrs' property since AAA has admitted that

Hood was its employee and agent and that it "directly controlled and commanded the actions" of Hood when these items were taken. [Doc No. 1-1] at p. 4 of 38 (¶¶ 13-14); pp. 21-27; [Doc. No. 26-3] at Ex. B, pp. 165-166, 169, 170-171, 173-175 (¶¶ 25-27, 40-44, 53-72). Thus, Barrs and AAA admitted that AAA was in possession and control of the Barrs' property vis-à-vis Hood when the property was converted.

Next, the insurance afforded under the policy does not apply to "property damage" to "'impaired property' or property that has not been physically injured, arising out of . . . inadequacy of the insured's work or delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement according to its terms" (Exclusion m). [Doc. 26-3] at p. 129 of 192. This exclusion applies to any "property damage" arising out of AAA's admitted failure to deconstruct the building in accordance with the contract, as well as the loss of AAA's lumber and other property arising out of the failure of Hood to stack and bind salvageable wood for Barrs' sole use, as AAA agreed to do pursuant to its contract with Barrs.

Finally, Barrs' derivative claims of negligent hiring and retention against AAA are also excluded from coverage because those claims would not exist but for the theft of Barrs' personal property by Hood and its failure to perform its contracted work in a workmanlike manner.

- 8 -

**II.    There Is No Duty To Indemnify Against The Consent Judgment If There Is No Coverage For Any Claim Upon Which The Consent Judgment Is Based.**

There is no coverage for any of the damages awarded through the Consent Judgment because that judgment does "not indicate what portion of the award was attributable to [any specific] claim[,]" nor did it "identify the amount of damages awarded [or] for which cause of action they were awarded," and therefore this Court "cannot discern from the [consent judgment] the amount of damages" awarded for claims that may be covered under the policy as opposed to the damages that were awarded for claims which are not covered. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Snider,* 607 Fed. Appx. 879, 881 (11th Cir. 2015) (applying Alabama law). In fact, the District Court below expressly held that a portion of the Consent Judgment at issue was not covered under the policy, yet it entered a final judgment for the full amount of the Consent Judgment anyway. This was clear error.

The District Court found that the unallocated Consent Judgment consists of both covered and non-covered claims. *See* [Doc. No. 38] at p. 38. Accordingly, because the judgment does "not indicate what portion of the award [i]s attributable to [any specific or covered] claim[,]" nor does it "identify the amount of damages awarded for [such covered and uncovered] injuries, [or] for which [covered or uncovered] cause[s] of action they were awarded," *Pa. Nat'l Mut. Cas. Ins. Co. v. Snider*, 607 F. App'x 879, 881 (11th Cir. 2015), the District Court was compelled to

- 9 -

find that there is no coverage for *any* of the damages awarded to Barrs by the unallocated Consent Judgment.

Moreover, the Eleventh Circuit rejected an attempt to segregate the awarded damages retroactively, concluding as follows:

> Even accepting that the [p]olicy does cover damages arising from conditions created by faulty work, the [plaintiffs] still have not carried their burden of proof. They offer no compelling explanation of how they can establish coverage given that they pursued two different theories of liability at trial in the underlying action, the [p]olicy does not cover damages arising out of [some of the claims supporting the judgment], and the jury returned a general verdict that did not identify [or specify] the amount of damages being awarded under each [covered or uncovered] theory.

*Id.* at 883-84.

### III.    Barrs Ultimately Admitted That No Coverage Exists.

On September 9, 2021, the District Court entered its summary judgment order on issues of coverage, finding that the unallocated Consent Judgment consists of both covered and non-covered claims. [Doc. 38]. Specifically, the Court held that "[a]ny portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of the mill is not covered under the Policy," while "the Policy provides coverage for [Barrs'] claims of negligent hiring and retention and negligent supervision *only to the extent* that they seek damages for the stolen lumber and other building materials." [Doc. 38] at p. 38 (emphasis added)].

- 10 -

Barrs then judicially admitted that the entire amount of the Consent Judgment is not covered. By its terms, the Consent Judgment is to be enforced in accordance with Barrs' Settlement Agreement. Because Barrs admitted that the parties to the Consent Judgment and Settlement Agreement, namely Barrs and AAA, agreed that the award of $557,500.00 was premised on damage to wood and brick during the deconstruction process, and <u>not</u> any theft, none of the Consent Judgment is covered under the Policy by reason of the District Court's prior ruling.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### I.  The Damages Awarded In The Consent Judgment Are Not Covered Under The Policy.

#### A. Choice of Law.

As an initial matter, a dispute arose in the District Court as to which state law applies to the interpretation of the policy issued by Auto-Owners.  Auto-Owners argued below that Alabama law applies.  The District Court held that Georgia law may apply. [Doc. 38] at p. 17 of 38.  Below, Auto-Owners shows that, regardless of whether Georgia law applies, there is still no coverage under the policy for the Consent Judgment - at all.

#### B.  The Two Categories of Property Damage.

The lawsuit filed against AAA did not seek damages for "bodily injury," "advertising injury," or "personal injury," as those terms are defined under the Auto-

Owners policy. *See* Generally, [Doc. No. 1-1]. The only category of damages alleged in that action which could conceivably be covered under the policy is for "property damage". *Id.*

In the District Court, two categories of property damage were identified as forming the basis for the unallocated Consent Judgment 1) that portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of Barrs' property; and 2) damages for the stolen lumber and other building materials. Indeed, in its first order on summary judgment, the District Court found that the unallocated Consent Judgment consists of both covered and non-covered claims. [Doc. No. 38]. Specifically, the District Court held that "[a]ny portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of the mill is not covered under the Policy," while "the Policy provides coverage for [Barrs'] claims of negligent hiring and retention and negligent supervision ***only to the extent*** that they seek damages for the stolen lumber and other building materials." [Doc. No. 38] at p. 38 (emphasis added). The District Court was correct in the former ruling and incorrect in the latter.

### C. Defective Work is Not Covered.

As to the former, Alabama and Georgia courts have repeatedly held that CGL insurance policies do not operate as performance bonds and do not provide coverage to repair, replace, and complete the insured's faulty work. *See, e.g., Town & Country*

*Prop., L.L.C. v. Amerisure Ins. Co.,* 111 So. 3d 699, 707 (Ala. 2011) ("[T]he general understanding [is] that a CGL policy is intended to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property while a performance bond is intended to insure the contractor against claims for the cost of repair or replacement of faulty work.") (citation and punctuation omitted); *Owners Ins. Co. v. Jim Carr Homebuilder, LLC,* 157 So. 3d 148, 156 (Ala. 2014) ("In sum, the cost of repairing or replacing faulty workmanship is not the intended object of a CGL policy issued to a builder or contractor."); *see also Taylor Morrison Servs. v. HDI-Gerling Am. Ins. Co.,* 746 S.E.2d 587, 591 (Ga. 2013)("CGL coverage generally is intended to insure against liabilities to third parties for injury to property or person, but not mere liabilities for the repair or correction of the faulty workmanship of the insured."). Thus, the faulty work and deconstruction are not covered, and the District Court's ruling below on this issue is correct.

### D. Intentional Acts are Not Covered.

As to the latter, the policy only provides coverage for "property damage" arising out of an "occurrence," which the policy defines as an accident. [Doc. No. 26-3], at pp. 125, 140 of 192; [Doc 34] at pp. 9-10 of 23 (¶¶ 24-25). In addition to requiring that any claimed damages be caused by an accident, the policy also excludes coverage for "property damage" "expected or intended from the standpoint of the insured[,]" (Exclusion a), which includes those intentional acts committed by

- 13 -

the insured's employees acting within the scope of their employment or while performing duties related to the conduct of the insured's business. [Doc. No. 26-3] at p. 126 of 192; [Doc 34] at pp. 11-12 of 23, ¶ 26; [Doc 34] at pp. 13 of 23, ¶ 27. The definition of an "occurrence" and this exclusion clearly and unambiguously preclude coverage for any damages arising out of the intentional theft and conversion of Barrs' property by AAA's admitted agent and employee, Hood, while he was acting under the control and at the direction of AAA.

Under Alabama law, the theft of these items would constitute a "deliberate act" which cannot be considered an accident, even if it results from poor judgment or a mistake of fact. *See Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006*, 1012-13 (Ala. 2005) (finding act of repossessing inventory with knowledge that it belonged to another, even if based on a mistake of fact, was intentional conduct consisting of "deliberate acts" and not an "accident"); *see also State Farm Fire & Casualty Co. v. Myrick*, 611 F. Supp. 2d 1287 (M.D. Ala. 2009) (finding that the insured's alleged conversion of funds was not an "accident" because it involved a series of deliberate acts). Thus, under Alabama law, the policy does not provide coverage for "property damage" arising out of the conversion and appropriation of Barrs' lumber and other materials by Hood, who was an admitted employee and agent, acting under the direction and control of AAA.

Even if the policy were interpreted in accordance with Georgia law, a Georgia court should likewise find that the theft of these items does not constitute an "accident" which would trigger coverage under the policy. *See Macon Iron & Paper Stock Co. v. Transcontinental Ins. Co.*, 93 F. Supp. 2d 1370 (M.D. Ga. 1999) (holding that insurers were not contractually liable to defend and indemnify their insured, a scrap metal recycler, against claims of conspiracy and conversion of stolen property where the insured purchased railroad cars which, unbeknownst to it, were stolen, and then scrapped the cars, because these actions did not constitute an "occurrence" or accident even if the insured's intentional actions were based on "erroneous information."); *see also G.M. Sign, Inc. v. St. Paul Fire & Marine Ins. Co.*, 768 Fed. Appx. 982 (11th Cir. 2019) ("[U]nder Georgia law an 'accident' does not include damage to persons or property when that damage is intentionally inflicted, even where that intentional conduct is caused by erroneous information.") (citations omitted). Because the "property damage" claims related to theft of Barrs' property did not arise out of an "occurrence" or accident, there is no coverage under the policy for the second category of damages awarded in the Consent Judgment.

Similarly, Barrs' derivative claims of negligent hiring and retention against AAA are also excluded from coverage because those claims would not exist but for the intentional theft of his personal property by Hood and its failure to perform its work in a workmanlike manner, and there is no coverage for these underlying acts

- 15 -

for all the reasons discussed above. *See, e.g., Continental Cas.Co. v. HSI Financial Svcs.*, 266 Ga. 260 (1996) (where negligent supervision claims arose out of the tortious conduct of the insured's employee, which was excluded from coverage, and would not have existed "but for" said conduct, there was no coverage for the derivative claims because "by its express terms, the exclusionary clause is focused solely upon the genesis of [plaintiff's] claims - - if those claims arose out of [the employee's] culpable conduct, as they did, then coverage need not be provided."); *Jefferson Insurance Co. v. Dunn*, 269 Ga. 213, 214 (1998) (no coverage for negligent hiring and supervision claims against insured-employer where such claims would not exist "but for" an assault and battery caused by the insured's employee, because the underlying conduct "came within the scope of the exclusionary clause."); *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262 (1996) ("[B]y its express terms, the exclusionary clause is focused solely upon the genesis of HSI's claims—if those claims arose out of Page's culpable conduct, as they did, then coverage need not be provided."); *IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co.*, 797 F. Supp. 2d 660, 664 (D. Md. 2011) (applying Georgia law) ("When an insurance policy covers only 'accidents,' the policy will not, absent other policy language to the contrary, cover claims arising from the intentional acts of an insured's employees. Moreover, such a policy will also not extend to negligence claims where the insured-employer's alleged negligence is related to the intentional acts of an employee.").

- 16 -

In the end, the second category of the damage claim identified by the District Court below are expressly premised on the conversion of Barrs' property by Hood, an admitted agent and employee. Under Georgia law, it is clear that theft/conversion does not constitute an "occurrence" or "accident." *See Macon Iron & Paper Stock Co. v. Transcontinental Ins. Co.*, 93 F. Supp. 2d 1370 (M.D. Ga. 1999); *G.M. Sign, Inc. v. St. Paul Fire & Marine Ins. Co.*, 768 Fed. Appx. 982 (11th Cir. 2019).

In spite of these undisputed facts, Barrs argued below that the holdings in *Macon Iron* and *St. Paul Fire* are inapplicable here because the intentional conduct in those cases was committed by the named insured, and Barrs' suggested that the intentional act of conversion committed by the insured's admitted agent and employee in this case cannot be imputed to the insured itself. The District Court wrongly agreed.

The District Court ignored the factual allegations of the first lawsuit, which were admitted by AAA in the Consent Judgment. AAA actually admitted that it employed Hood, controlled Hood, and that Hood acted as its agent. In Georgia, "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. By admitting to Counts I-IV in the Consent Judgment, AAA admitted that its employee, Hood, converted Barrs'

- 17 -

property and was otherwise acting on its behalf and under its direct control and command. *See* [ECF No. 28-2] at pp. 11-13 (¶¶ 68-70, 75-77, 86); *see also* [Doc. No. 28-5]. Therefore, Hood's actions are clearly imputed to the insured itself.

Finally, "there can be no claim for negligent hiring, training, and supervision of certain individuals where . . . the defendant was not the employer of those individuals." *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 346 Ga. App. 548, 562 (Ga. Ct. App. 2018). Again, through the Consent Judgment, AAA admitted liability under theories of negligent hiring, retention, and supervision (Counts II-IV) based on the actions of Hood and, consequently, AAA admitted that it was the employer of Hood. [Doc No. 1-1] at p. 4 of 38 (¶¶ 13-14); pp. 21-27; [Doc. No. 26-3] at Ex. B, pp. 165-166, 169, 170-171, 173-175 (¶¶ 25-27, 40-44, 53-72); *see also* [Doc No. 28-5].

Under the terms of the policy, the named insured's employees also qualify as "insureds." [Doc. No. 26-3] at p. 126 of 192; [Doc 34] at pp. 11-12 of 23 (¶ 26); [Doc 34] at pp. 13 of 23 (¶ 27). Thus, because AAA admitted to liability under legal theories which cannot exist under Georgia law absent an employer-employee relationship, it is undisputed that Hood was its employee and that Hood qualified as an insured under the policy. For this additional reason, Hood's intentional actions must be imputed to AAA, resulting in a finding of no coverage under the policy.

### E. Exclusion j(5) applies.

But there is no coverage for the second category of damage for different reasons, as well. Coverage for any loss arising out of the stolen lumber and other materials is also excluded by operation of Exclusion j(5), which precludes coverage for "property damage" to "personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured[.]" [Doc. 26-3] at p. 129 of 192.

Under Georgia law, a bailment occurs when there is "a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." O.C.G.A. § 44-12-40. "When the insured is a bailee of property, that property has generally been found to be in the 'care, custody or control' of the insured within the meaning of the insurance coverage exclusion." *Park 'n Go v. United States Fid. & Guar. Co.*, 266 Ga. 787, 790 (1996). In addition, "where the property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the care, custody or control of the insured." *Royal Indem. Co. v. Smith*, 121 Ga. App. 272, 274 (1970).

In this case, the exclusion clearly applies. First, AAA was charged by contract with disposing of the wood and building materials in accordance with its terms.

- 19 -

AAA had the wood and materials in its possession through Hood, over whom it exercised control. The exclusion applies, by its terms, to the damages resulting from the theft of Barrs' property since AAA has admitted that it "directly controlled and commanded the actions" of Hood when these items were taken. [Doc. No. 26-3], at p. 175 of 192 (¶ 68). Thus, the exclusion for damage to property in the care, custody, or control of the insured applies, and there is no coverage under the policy as a result.

### F. Exclusion m. applies.

Next, the insurance afforded under the policy does not apply to "property damage" to "'impaired property' or property that has not been physically injured, arising out of . . . inadequacy of the insured's work or delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement according to its terms" (Exclusion m). [Doc. 26-3] at p. 129 of 192. This exclusion applies to any "property damage" arising out of AAA's admitted failure to deconstruct the building in accordance with the contract, as well as the loss of lumber and other property arising out of the failure of Hood to comply with the contract terms.

For each of these reasons, the District Court erred in finding that any portion of the unallocated Consent Judgment in favor of Barrs is covered under the policy issued by Auto-Owners. Therefore, the District Court's Order and Judgment should be vacated, and this Court should direct that Judgment be entered in favor of Auto-Owners instead.

**II.    There Is No Duty To Indemnify Against The Consent Judgment If There Is No Coverage For Any Claim Upon Which The Consent Judgment Is Based.**

To the extent that Alabama law applies to the policy, there is no coverage for the unallocated Consent Judgment. Indeed, under both Georgia and Alabama choice-of-law principles, courts adhere to the doctrine of *lex loci contractus*, which holds that contracts should be interpreted in accordance with the law of the place where the contract is made. *See, e.g.*, *McGill v. Am. Trucking & Transp., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). AAA's policy was issued and delivered in Alabama to an Alabama corporation. Consequently, Auto-Owners' duties and obligations under the policy should be decided in accordance with Alabama substantive law.

Here, it is undisputed that the Consent Judgment does "not indicate what portion of the award was attributable to [any specific] claim[,]" nor did it "identify the amount of damages awarded [or] for which cause of action they were awarded," and therefore this Court "cannot discern from the [consent judgment] the amount of damages" awarded for claims that may be covered under the policy as opposed to the damages that were awarded for claims which are not covered. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Snider*, 607 Fed. Appx. 879, 881 (11th Cir. 2015) (applying Alabama law).

- 21 -

In *Snider*, plaintiff-homeowners hired a contractor to build their home, but the work did not proceed as planned. *Id.* at 880. "After more than a year of work, the project was over budget and incomplete" and the contractor "walked off the job and did not return, forcing the [plaintiffs] to hire a new builder to complete the construction." *Id.* Plaintiffs sued the contractor in Alabama state court, asserting claims of breach of contract and breach of implied warranty based upon the contractor's failure to complete the construction on their home and the contractor's failure to "properly" perform his work. *Id.*

"At trial, the [plaintiffs] sought damages for the following injuries: (1) mental anguish, (2) emotional distress, (3) the cost of completing the work that [contractor] left unfinished but for which he was paid, (4) the cost of repairing [contractor's] faulty work, (5) the cost of repairing property damage caused by water intrusion resulting from [contractor's] faulty work, and (6) diminution in value of the home." *Id.* at 881. The jury awarded the plaintiffs $700,000. *Id.* As reflected on the jury verdict form, the jury found in the plaintiffs' "favor on both their breach of contract and implied warranty claims, but the form does not indicate what portion of the award was attributable to either claim" and the verdict form "indicated that it was awarding damages for mental anguish and emotional distress, [but] the verdict form did not identify the amount of damages awarded for these injuries, for which cause

of action they were awarded, or whether the damages awarded included compensation for any of the [plaintiff's] other injuries." *Id.*

Penn National insured the contractor under a CGL policy. *Id.* at 880. While the lawsuit was pending, Penn National filed a declaratory judgment action seeking a declaration that it had no duty to indemnify the contractor under the policy with respect to the plaintiffs' claims. *Id.* at 880. Penn National specifically argued that the plaintiffs' "bodily injuries and property damage did not arise out of an occurrence" because its policy, like the policy here, defined "occurrence" as "an accident," meaning "'[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could [not] be reasonably anticipated.'" *Id.* at 882 (citing *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005)). The district court agreed, and the Eleventh Circuit Court of Appeals affirmed.

The Court noted that the plaintiffs, as "the parties seeking coverage under the Policy . . . bear the burden of proving that coverage exists[,]" and that the plaintiffs must therefore "show that an accident caused the injuries for which they were awarded damages." *Id.* at 882. The Court determined that the policy "plainly does not cover damages arising out of [the contractor] abandoning the job[,]" which "was a deliberate, purposeful act, not an accident," and the Court found that this fact

"alone is sufficient to conclude that there is no coverage under the Policy." *Id.* at

882-83. The Court explained:

> We cannot discern from the verdict form the amount of damages the jury
> awarded the [plaintiffs] for their injuries caused by [the contractor's]
> abandonment of the job, as opposed to injuries caused by [contractor's] faulty
> work. Alabama courts have held that when (1) the injured party in the
> underlying action pursues two theories of liability, (2) under one of the
> theories there is no coverage under the policy, and (3) the jury returned a
> general verdict, then it is "impossible" to establish coverage under the policy.

*Id.* at 883 (citing *Ala. Hosp. Ass'n Trust v. Mutual Assurance Soc'y*, 538 So. 2d 1209,

1216 (Ala. 1989)).

The Court rejected the plaintiffs' "attempt to show that some of their injuries

that were the result of [the contractor's] faulty work were caused by accidental, not

intentional, conduct[,]" noting that "[u]nder Alabama law, when a contractor

performs faulty work, generally his conduct is not considered an accident." *Snider*,

607 Fed. Appx. at 883. The Court further noted that the plaintiffs "sought damages

for repairing [contractor's] faulty work, which the Policy does not cover, and

damages for repairing conditions created by [the contractor's] faulty work, which

the Policy does not cover." *Id.* The Court concluded:

> Even accepting that the Policy does cover damages arising from conditions
> created by faulty work, the [plaintiffs] still have not carried their burden of
> proof. They offer no compelling explanation of how they can establish
> coverage given that they pursued two different theories of liability at trial in
> the underlying action, the Policy does not cover damages arising out of [the

contractor] abandoning the job, and the jury returned a general verdict that did not identify the amount of damages being awarded under each theory.

*Id.* at 883-84.

The consent judgment at issue here is similarly flawed because it awards $557,500 based on four different counts and the damages were not allocated to any specific count. [Doc. No. 1-1] at p. 5 (¶ 18); pp. 32-34. Thus, if there is no coverage as to any portion of the general damage award then, in accordance with Alabama law, there can be no coverage for the award as a whole.

Georgia law should be no different. First, under Georgia law, the insured bears the burden of proving that it has sustained a covered loss. *See, e.g.*, *Matthews v. State Farm Fire & Cas. Co.*, 500 Fed. App'x 836, 840-841 (11th Cir. 2012); *Chix v. Ga. Farm Bureau Ins. Co.*, 258 S.E.2d 208, 209 (Ga. Ct. App. 1979); *Reserve Life Ins. Co. v. Davis*, 164 S.E.2d 132, 133 (Ga. 1968). Therefore, Barrs, as assignee of AAA, has the burden to show that the Consent Judgment is covered under the policy. He has not met his burden.

Second, Georgia case law indicates that monetary awards – such as attorney's fees for bad faith – must similarly be allocated between successful and unsuccessful claims in order to be recoverable. *See*, *e.g.*, *Monterrey Mexican Rest. of Wise, Inc. v. Leon*, 282 Ga. App. 439, 453 (2006) ("[W]here attorney fees are awarded . . . , such awards must be apportioned to those attorney fees attributable to claims on

- 25 -

which the plaintiff prevailed."). Therefore, even under Georgia law, Barrs failed to properly allocate the Consent Judgment. As a result, Barrs failed to comply with the law regarding the allocation of coverage for his damages, thus making his entire award speculative with respect to what is covered by the policy and what is not. Accordingly, Barrs did not meet his burden to prove his damages beyond a purely speculative level.

Finally, the District Court's Judgment is inconsistent with its own findings. The District Court expressly held that the Consent Judgment included noncovered damages but then entered judgment in favor of Barrs as to the entire amount claimed. The Order and Judgment are erroneous for this reason as well, and both should be vacated. *Custer v. Terex Corp.*, 196 Fed. Appx. 733 (11th Cir. 2006) (rejecting an internally inconsistent general verdict and ordering a new trial).

## III. Barrs Ultimately Admitted That No Coverage Exists for the Consent Judgment.

On September 9, 2021, the District Court entered its summary judgment order on issues of coverage, finding that the unallocated Consent Judgment consists of both covered and non-covered claims. [Doc. 38]. Specifically, the Court held that "[a]ny portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of the mill is not covered under the Policy," while "the Policy provides coverage for [Barrs'] claims of negligent hiring and retention and

negligent supervision **only to the extent** that they seek damages for the stolen lumber and other building materials." [Doc. 38] at p. 38 (emphasis added)].

In subsequent briefing and filings, Barrs then judicially admitted that the entire amount of the Consent Judgment is not covered. In his Statement of Material Facts in Support of his Opposition to Auto-Owners' second motion, Barrs judicially admitted that:

10.

On April 24, 2019, after nearly 20 months of hard-fought litigation, Mr. Barrs and AAA resolved the Underlying Lawsuit, and executed a negotiated Settlement Agreement.

11.

The Settlement Agreement contains the following language and terms:

…AAAGCI hereby admits liability as to Counts I and IV of Complaint for Damages, which set forth claims against AAAGCI for negligent performance of the deconstruction work at issue and negligent hiring of Z & H, of which Hood was the sole owner…

**2. DETERMINATION OF DAMAGES**
The Parties hereby agree that AAAGCI is liable to Barrs in the amount of Five Hundred Fifty Seven Thousand Five Hundred and No/100 Dollars ($577,500.00) for the damages Barrs incurred as a result of AAAGCI's admitted negligence as set forth above. The Parties agree that these damages concern damage to wood and brick during the deconstruction process which

- 27 -

> resulted because of AAAGCI's negligence as set forth
> above.

[Doc. 49-1] at p. 11 of 17 (¶¶ 10-11) (emphasis in original).

Barrs then cited and relied upon this same quote from the "Settlement Agreement" in his briefing below. [Doc. 49] at p. 4 of 14. Barrs even emphasized by underline that the parties to the Settlement Agreement agreed that the "damages concern damage to wood and brick during the deconstruction process". *Id.*

Barrs' admissions and arguments on this issue are dispositive. Indeed, "judicial admissions are proof possessing the highest possible probative value." *See Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc*., 713 F.2d 618, 621 (11th Cir. 1983). The effect of a judicial admission is "binding" and "conclusive." *See id*. Barrs conceded that the entire judgment forming the basis of his claim is not covered by operation of the District Court's prior Order, finding that "[a]ny portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of the mill is not covered under the Policy". [Doc. No. 38] at p. 38. By its terms, the Consent Judgment is to be enforced in accordance with the related Settlement Agreement. [Doc. No. 1-1] at p. 33 of 38 (¶ 2). Because Barrs admitted that the parties to the Consent Judgment and Settlement Agreement agreed that the award of $557,500.00 was premised on damage to wood and brick during the deconstruction process, and not any theft, none of the Consent Judgment

- 28 -

is covered under the policy by reason of the District Court's prior ruling, which Barrs did not appeal.

As a result, all of the damages forming the basis of the Consent Judgment and Settlement Agreement, by Barrs' own admission, are premised on faulty workmanship or the improper deconstruction of the mill. Barrs agreed that these "<u>damages concern damage to wood and brick during the deconstruction process</u>". Based on the District Court's prior ruling, these damages are not covered under the Auto-Owners policy, and the District Court obviously erred in ignoring this critical issue.

For these reasons, the policy does not afford coverage for the damages awarded in the Consent Judgment, and Auto-Owners is entitled to a judgment that it owes no duty to indemnify Barrs against that judgment. The District Court erred when it ignored the admissions by Barrs below that no portion of the unallocated Consent Judgment is covered under the policy issued by Auto-Owners based on the District Court's prior ruling in the case below, and this Court should vacate the Order and Judgment and, instead, direct entry of judgment in favor of Auto-Owners.

## **CONCLUSION**

Because the policy issued to AAA affords no coverage at all for the damages forming the basis of the Consent Judgment agreed to between Barrs and AAA, the District Court's Order and Final Judgment in favor of Barrs must be reversed.

This 7th day of February, 2023.

Respectfully submitted,

KENDALL | MANDELL, LLC

/s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:   (770) 577-8113
mckendall@kendallmandell.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a).</u>

I hereby certify that this brief complies with the typeface requirements of

Fed. R. App. Pro. 32(a)(4)-(5) and the type style requirements of Fed. R. App. Pro.

32(a)(6) because this brief has been prepared in a proportionally spaced typeface

using Microsoft Word in 14 point font size using Times New Roman style font.

I also hereby certify that this brief complies with the type volume

requirements of Fed. R. App. Pro. 32(a)(7)(B)(i). In compliance with Fed. R. App.

Pro. 32(a)(7)(C)(i), I hereby certify that the Appellant's principal brief contains

7134 words and 606 lines, excluding the parts of the brief exempted by Fed. R.

App. Pro. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

KENDALL | MANDELL, LLC

/s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:   (770) 577-8113
mckendall@kendallmandell.com

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | |
| Appellant, | Appeal Case No. 22-13649-B |
| v. | |
| EARL D. BARRS, | |
| Appellee. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and

foregoing **BRIEF** upon all parties to this matter by using the CM/ECF system, to

counsel of record as follows:

Duke Groover, Esq.
Bruce D. Dubberly, IV, Esq.
JAMES, BATES, BRANNAN,
 GROOVER, LLP
P. O. Box 4283
Macon, Georgia 31208-4283

This 7th day of February, 2023.

/s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

I hereby certify that I have this day uploaded a file containing the within and

foregoing **Brief of Appellant** to the website for the United States Court of Appeals

for the Eleventh Circuit at www.ca11.uscourts.gov.

This 7th day of February, 2023.

 /s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030